UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTOPHER K.,[1]

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 1:21-cv-10152
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Christopher K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On April 28, 2015, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging that he has been disabled since October 17, 2013. R. 15, 64, 100, 108. The application

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

was denied initially and upon reconsideration. *Id*. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 15, 64. ALJ Jennifer Pustizzi held a hearing on April 20, 2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 64. In a decision dated June 18, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 17, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 64–85. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 23, 2018. R. 91–97.

In its decision, the Appeals Council noted that Plaintiff had submitted evidence from June and August 2018, but advised Plaintiff, *inter alia*, that "[i]f you want us to consider whether you were disabled after June 18, 2018, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use June 18, 2018, the date of your request for review, as the date of your new claim." R. 92. On December 16, 2018, Plaintiff filed a new application for benefits, again alleging disability since October 17, 2013. R. 98, 106, 191–92. That application was denied initially and upon reconsideration. R. 98, 106. ALJ Karen Shelton held a hearing on August 25, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 29–60. In a decision dated October 7, 2020, ALJ Shelton again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 17, 2013, Plaintiff's alleged disability onset date, through December 31, 2018, the date on which Plaintiff was last insured. R. 15–22 (noting, *inter alia*, that the doctrine of *res judicata* foreclosed the current claim through the date of the decision issued on June 18, 2018). That decision became final when the Appeals Council declined review on March 9, 2021. R. 1–6.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 21, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[3] On that same day, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

5

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

  **B.**  **Sequential Evaluation Process**

  The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

  At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

  At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.    ALJ DECISION AND APPELLATE ISSUES**

Plaintiff was 38 years old on December 31, 2018, the date on which he was last insured for DIB. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 19, 2018, the first date of the period that was not foreclosed by the doctrine of *res judicata*, and Plaintiff's date last insured. R. 18.

At step two, the ALJ found that Plaintiff's degenerative disc disease and degenerative joint disease were severe inpairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 19–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an installation supervisor and installation worker. R. 21.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as a telemarketer, an appointment clerk, and a customer service representative–existed in the national economy and could be performed by Plaintiff. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act through December 31, 2018, the date on which Plaintiff was last insured. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three and four, and also challenges the constitutionality of the appointment of the Commissioner. Plaintiff asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 13. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

IV. **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On July 20, 2020, Plaintiff's treating physician, Richard Kader, D.O., completed a six-

page, fill-in-the-blank, check-the-box form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." R. 466–71 ("July 2020 opinion").[4] Dr. Kader opined that Plaintiff could occasionally (meaning very little up to one-third of the time) lift and carry up to 10 pounds and could sit for one hour at a time without interruption and for 2 hours total in an eight-hour day; could stand for 30 minutes at a time without interruption and for 1 hour total in an eight-hour day; could walk for 30 minutes at a time without interruption and for 1 hour total in an eight-hour day. R. 466–67. According to Dr. Kader, Plaintiff required the use of a cane, which was medically necessary, to ambulate; Plaintiff could walk only a couple of steps without a cane. R. 467.[5] Plaintiff could occasionally use his right (dominant) hand for reaching overhead and in all other directions and could occasionally operate foot controls bilaterally. R. 468 (leaving blank questions related to any limitations related to Plaintiff's left hand). Plaintiff could occasionally climb stairs and ramps and could balance, but could never climb ladders or scaffolds, nor could he ever stoop, kneel, crouch, or crawl. R. 469. Plaintiff's impairments did not affect his hearing or vision. *Id.* Plaintiff could occasionally operate a motor vehicle and tolerate humidity and wetness, but could never tolerate unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, or vibrations. R. 470. Dr. Kader opined that Plaintiff could climb a few steps at a reasonable pace using a single hand rail, could prepare a simple meal and feed himself, could care for his personal hygiene, and could sort, handle, use paper/files, but could not travel without a companion for assistance,

---

[4] Dr. Kader offered other opinions as well, which the ALJ discounted. R. 20. Although Plaintiff challenges the ALJ's evaluation of all of Dr. Kader's opinions, the Court focuses its discussion on the challenge to Dr. Kader's July 20, 2020, opinion.

[5] Dr. Kader wrote "see attached" in response to requests to identify supporting medical or clinical findings and work-related activities affected by any impairments, R. 467, 469, 471, but it is not clear to the Court what information this physician attached to this form.

ambulate without using a wheelchair, walker, or two canes or two crutches, walk a block at a reasonable pace on rough or uneven surfaces, or use standard public transportation. R. 471. Dr. Kader indicated that these limitations had lasted or would last for twelve consecutive months. *Id*.

## V.  DISCUSSION

Plaintiff argues that the ALJ erred in considering this opinion. *Plaintiff's Brief*, ECF No. 9, pp. 9–20; *Plaintiff's Reply Brief*, ECF No. 13, pp. 4–9. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner

---

[6] As previously noted, Plaintiff's current application was filed on December 16, 2018.

will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b).

In the case presently before the Court, the ALJ found at step four of the sequential evaluation process that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he requires a cane for ambulation; must be able to stand for 5 minutes after an hour of sitting while remaining on task; can only frequently handle, finger and feel bilaterally; cannot utilize foot controls with his left leg; can only occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds; can occasionally balance, stoop or crouch, but never kneel or crawl; and cannot be exposed to extreme humidity, wetness or cold.

R. 19. In reaching this determination, the ALJ found, *inter alia*, that Dr. Kader's July 2020 opinion was not persuasive, reasoning as follows:

> In connection with his treatment of the claimant, Richard Kader, D.O. opines that the claimant is permanently and totally disabled (Exhibits B5F, B7F & B11F). Further, Dr. Kader opined that the claimant is limited to sedentary duty work, except he can only sit for 2 hours, sit for 1 hour and walk for 1 hour; requires the use of a cane to ambulate yet has manipulative limitations; and is subject to postural and environmental limitations (Exhibit B8F, pages 5-10). Additionally, Dr. Kader opined that the claimant meets Listing 1.04 (Id. at 3-4). I do not find Dr. Kader's opinion persuasive. Although he is the claimant's treating primary care provider, his treatment has been limited to the prescription of Percocet, which has admittedly stabilized the claimant's symptoms. Further, the determination of disability is an issue reserved for the Commissioner of Social Security to ascertain. Additionally, his opinion that the claimant meets the requirements of Listing 1.04 is not supported by the evidence of record, including the claimant's most recent MRIs, dated August 2018.

R. 20.

Plaintiff contends that this evaluation is flawed because the only reason offered by the ALJ for discounting the opinion is that the treatment was conservative; the ALJ never discussed

the consistency factor, nor did the ALJ identify any evidence that conflicted with this opinion.[7] *Plaintiff's Brief*, ECF No. 9, pp. 9–16; *Plaintiff's Reply Brief*, ECF No. 13, pp. 4–8. According to Plaintiff, the ALJ's explanation is therefore unreviewable and substantial evidence does not support the ALJ's finding that this opinion is unpersuasive. *Id*. In response, the Acting Commissioner contends that the ALJ properly considered this opinion in accordance with the applicable regulations and argues that Plaintiff's challenge amounts to a mere improper request that this Court re-weigh the evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12, pp. 11–19.

The Court is not persuaded that the ALJ properly considered the consistency factor when analyzing Dr. Kader's July 2020 opinion. As set forth above, the ALJ did not expressly discuss how he considered the required factors of supportability and consistency when discrediting this opinion. R. 20. The ALJ's stated reason for discounting Dr. Kader's July 2020 opinion, that this physician's treatment was limited to prescribing Percocet, qualifies—at best—as consideration of the supportability factor; this reason does not address the consistency of Dr. Kader's opinion with the other medical evidence in the record. *See id*. "'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and *other evidence* within the record.'" *Kaschak v. Kijakazi*, No. CV 21-354-E, 2023 WL 2354812, at *4 (W.D. Pa. Mar. 3, 2023) (internal citations omitted) (emphasis added); *see also* 20 C.F.R. § 404.1520c(c)(2) (explaining that a medical opinion is more persuasive "[t]he more consistent a

---

[7] As previously noted, the Court focuses its discussion on Plaintiff's challenge to Dr. Kader's July 2020 opinion.

13

medical opinion(s) or prior administrative medical finding(s) is with the *evidence from other medical sources and nonmedical sources* in the claim") (emphasis added).

It is true that an ALJ is not required to use "magic words" in considering the supportability and consistency of a medical opinion and reversal is unwarranted if, after review of the ALJ's decision, the Court can "detect consideration of" or a "coded reference" to these factors in the ALJ's discussion. *Kaschak*, 2023 WL 2354812, at *4 (citations and internal quotation marks omitted). However, in the present case, the Court cannot detect such consideration or coded reference in the ALJ's discussion. R. 19–21. Notably, it is not at all apparent why the medical evidence referred to by the ALJ is inconsistent with Dr. Kader's July 2020 opinion. For example, MRIs of Plaintiff's lumbar spine and cervical spine reveal, *inter alia*, a disc bulge with central herniation and tear at L3-4 and flattening of the thecal sac with inferior bilateral neural foraminal narrowing, as well as a disc bulge flattening the thecal sac at C5-6 with inferior bilateral neural foraminal narrowing. R. 20, 310–11. In considering this evidence, the ALJ rejected opinions, rendered by the reviewing state agency medical consultants, that Plaintiff's impairments were non-severe "[g]iven the evidence received at the hearing level, which includes MRIs from August 2018 and ongoing treatment for back pain[.]" R. 20. Although the ALJ referred to evidence that Plaintiff ambulated without difficulty during a visit to the emergency department for complaints of lumbar pain, R. 20, the ALJ apparently discounted that contrary evidence in light of his discrediting the state agency opinions and his RFC finding that Plaintiff required a cane to ambulate. R. 19. The Acting Commissioner also points to the ALJ's mention that Plaintiff was discharged from a pain treatment program of another practice after testing positive for cocaine. *See* R. 20. Without more or some further explanation, however, it is not clear to this Court why this mention satisfies the requirement that the ALJ consider the factor

of consistency. Fundamentally, the ALJ's failure to adequately explain how he considered the consistency factor in his evaluation of Dr. Kader's July 2020 opinion frustrates this Court's ability to determine whether substantial evidence supports the ALJ's evaluation and, ultimately, the ALJ's disability determination. *See Nicholas R. v. Kijakazi*, No. CV 22-04510, 2023 WL 3580837, at *7 (D.N.J. May 19, 2023) (remanding where, *inter alia*, "the ALJ failed to thoroughly discuss the purported inconsistency of Dr. Meza's opinion" and the ALJ's "conclusory and unsupported statements of inconsistency are insufficient for this Court to engage in a meaningful review"); *Lisa V. v. Comm'r of Soc. Sec.*, No. 2:21-CV-14106, 2022 WL 3443987, at *7 (D.N.J. Aug. 17, 2022) ("In sum, the ALJ's terse treatment has precluded this Court from conducting meaningful review of his persuasiveness assessment, and post hoc rationalizations of the Commissioner are not an acceptable basis to affirm the decision.").

Furthermore, the Court cannot conclude that the ALJ's error in this regard is harmless. As set forth above, Dr. Kader's July 2020 opinion was critical to Plaintiff's claim, particularly when one considers that the doctor opined that Plaintiff suffers greater limitations than those contained in the RFC found by the ALJ. R. 19, 466–71. For example, Dr. Kader found that Plaintiff, *inter alia*, could sit for a total of only two hours, could stand for only a total of one hour, and could walk for only a total of one hour in an eight-hour workday; Plaintiff could never handle and finger with his hands; could only occasionally feel with his hands; and could only occasionally operate foot controls with his right foot. R. 467–68. Moreover, Dr. Kader's opined limitations take on greater significance when one considers that the vocational expert testified, *inter alia*, that there would be no full-time, competitive employment available to a hypothetical individual who is limited to a maximum of sitting, standing, and walking four hours per day, which totals less than a full competitive day. R. 58–59.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of Dr. Kader's July 2020 opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Kader's July 2020 opinion and the RFC determination, the Court does not consider those claims. However, on remand, the Court encourages the ALJ to further explain his finding at step three of the sequential evaluation, *i.e.*, that Plaintiff did not meet or medically equal Listing 1.04, which addresses disorders of the spine. R. 18–19. Specifically, it would be helpful for the ALJ to explain why the record evidence, including the August 2018 MRIs of Plaintiff's cervical and lumbar spine did not support Dr. Kader's opinion that Plaintiff's impairments/limitations met or medically equaled the requirements of that listing, R. 20, and, similarly, why that objective evidence—along with the ALJ's RFC finding that Plaintiff required a cane to ambulate—did not meet or medically equal Listing 1.04.

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 29, 2023                           *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE